# In the United States Court of Federal Claims

No. 22-676C
(Filed: May 22, 2024)
**FOR PUBLICATION**

*****************************************

| | |
|---|---|
| BARBARICUM LLC, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | * |
| | * |
| THE UNITED STATES, | * |
| | * |
| Defendant. | * |
| | * |

*Filed with the Classified Information Security Officer*
CISO _____
Date __5/23/24__

**REDACTED / CLEARED FOR PUBLIC RELEASE**

*****************************************

*Ryan C. Bradel*, Ward & Berry PLLC, Tysons, VA, for Plaintiff. With him on briefs was *P. Tyson Marx*, Ward & Berry PLLC, Tysons, VA.

*Christopher L. Harlow*, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for Defendant, United States. With him on briefs were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, *Patricia M. McCarthy*, Director, *Douglas K. Mickle*, Assistant Director, as well as *Kristina M. Hogan* and *Maj. Danielle McGinnis*, Attorney-Advisors, U.S. Air Force. *Elizabeth M.D. Pullin*, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., has since been substituted as counsel of record.

## OPINION AND ORDER

Plaintiff Barbaricum LLC filed a bid protest regarding its exclusion by the National Air and Space Intelligence Center ("NASIC") from the competitive range for contract awards under the agency's NOVASTAR procurement. Before the Court are the parties' cross-motions for judgment on the administrative record pursuant to RCFC 52.1(c), as well as Plaintiff's motion to supplement the administrative record.[1]

---

[1] Pl.'s Mot. for J. on the Administrative Record ("Pl.'s MJAR") (ECF 60); Def.'s Cross-Mot. for J. on the Administrative Record & Opp. to Pl.'s Mot. for J. on the Administrative Record ("Def.'s MJAR") (ECF 63); Pl.'s Resp. & Reply ("Pl.'s R&R") (ECF 67); Def.'s Reply & Resp. to Mot. to Supp. ("Def.'s Reply") (ECF 69). Plaintiff filed two motions to supplement the administrative record with declarations. *See* Pl.'s First Mot. to Supp. (Engle declaration) (ECF 56); Pl.'s Second Mot. to Supp. (Hogan declaration) (ECF 66). The first motion was granted. *See* Order (ECF 61). Defendant responded to the second motion, and Plaintiff replied. *See* Def.'s Reply (ECF 69); Pl.'s Reply (ECF 71). An administrative record ("AR") (ECF 25), top secret administrative record ("TS_AR") (ECF 34), and transcript of the hearing

Plaintiff argues that NASIC's evaluation was arbitrary, capricious, and unreasonable; that NASIC applied disparate evaluation standards to Plaintiff's proposal and those of successful offerors; and that NASIC's solicitation contained latent ambiguities that prejudiced Plaintiff.

Because NASIC's ultimate decision to exclude Barbaricum was not arbitrary or capricious, Plaintiff's motion for judgment on the administrative record is **DENIED**. Because Plaintiff has not demonstrated that review of the agency decision requires the introduction of additional materials, Plaintiff's motion to supplement the administrative record is also **DENIED**. Defendant's motion for judgment on the administrative record is **GRANTED**.

## BACKGROUND

### I. The Solicitation

NASIC's function is to analyze security threats in support of United States defense operations and policy. AR 445. NASIC's work is organized in terms of five "missions" and six "disciplines." AR 447. NASIC's missions are Air, Space, Cyber, Forces, and Missiles. AR 445–47. NASIC's disciplines are Geospatial Intelligence ("GEOINT"), Measurement and Signature Intelligence ("MASINT"), Signals Intelligence ("SIGINT"), Human Intelligence ("HUMINT"), Open Source Intelligence ("OSINT"), and Technical Intelligence ("TECHINT"). AR 446–47. GEOINT, the discipline most relevant in this case, involves "[a]nalyz[ing], assess[ing], and exploit[ing] imagery and geospatial information to describe, assess, and visually depict physical features and geographically reference activities on Earth." AR 446

In 2021, NASIC published Solicitation No. FA860421RB007. AR 95. The Solicitation requested proposals for a multi-award, Indefinite-Delivery/Indefinite-Quantity[2] contract under NASIC's NOVASTAR acquisition. TS_AR 6804; AR 95–97, 445, 762–64, 855, 4563. Successful offerors were to provide support for NASIC's work in the "research, development, and sustainment of new and existing hardware, systems and software capabilities" that enable "scientific and technical intelligence production for the United States Air Force ... , the Department of Defense ... and National Level intelligence efforts." AR 445. Work on the contract would involve "the production of technical intelligence through collection, analysis, planning, processing, dissemination, archiving and associated activities" relating to NASIC's missions and disciplines. *Id.* The Solicitation described contractual performance for NASIC's missions and disciplines in terms of a "Scope of Work" divided into four parts:

---

on the cross-motions for judgment on the administrative record ("Tr.") have also been filed with the Court.

[2] *See* Federal Acquisition Regulation ("FAR") subpart 16.5.

"research," "development," "sustainment," and — most relevantly for this case — "production." AR 447–50.

The Solicitation provided that NASIC would evaluate proposals for award on a "lowest price technically acceptable" basis. AR 739, 855. Successful offerors would then be eligible to compete for "task orders" relating to NASIC's various projects, under which they would render performance and receive payment. AR 97, 266, 445–51, 754, 757, 796, 855; *see also* AR 386–87, 393 (sample task order form).

NASIC anticipated selecting "approximately six" offerors, but indicated it would select more or fewer than six "if deemed more efficient for execution." AR 739. The agency anticipated making awards without entering discussions with offerors, but reserved the right to enter discussions if needed. *Id.* In that event, "[o]fferor responses to Evaluation Notices (ENs) and the Final Proposal Revision (FPR) [would] be considered in making the source selection decision." AR 740. The agency also warned offerors that their proposals could be excluded from the competitive range if they were found to have defects that were "not considered correctable through discussions." AR 739.

## II. Relevant Evaluation Criteria

NASIC evaluated proposals on three factors: an "entry gate," a "technical factor," and a "price factor." AR 740. The technical factor had three subfactors: Program Management (Subfactor 1), Technical Capability and Understanding (Subfactor 2), and the Classified Intelligence Scenario (Subfactor 3). *Id.* This case concerns the second and third technical subfactors.

The technical subfactors were to be graded as either "acceptable" or "unacceptable," AR 353, 741; for a proposal to be technically acceptable, each technical subfactor had to be rated as "acceptable." *Id.* The acceptability of the technical subfactors was evaluated, in turn, based on "measures of merit" set out in the Solicitation. AR 741. Each measure of merit for each subfactor was graded as either met or not met, *see, e.g.*, TS_AR 5960–6065; *see also* AR 741, and all measures of merit had to be met for the subfactor to be rated "acceptable." AR 741; Tr. at 176. To meet a measure of merit, a proposal had to provide a detailed and specific explanation of the "actual methodology" the offeror would use to perform each requirement of the contract, consistent with the scope of work. AR 732–42.

The technical subfactors and their measures of merit were evaluated by NASIC's technical evaluation team, a collection of subject matter experts who evaluated the proposal sections "relevant to their experience and mission focus." AR

741, 856, 858, 865. The agency noted that the evaluation process was "subjective" and therefore "professional judgment is implicit throughout the entire process." AR 739.

Subfactor 2 had a single measure of merit: "Technical Capability and Understanding." AR 742. That measure of merit was separately evaluated as to the scope of work for "each NASIC Mission and Discipline." *Id.*

For production of GEOINT — as mentioned above, the scope of work most relevant here — the Solicitation indicated that an offeror needed to show competency in "obtaining data, performing technical analysis, developing assessments, evaluations, and predictions of capabilities; [and] designing and assessing current, developmental and projected threat systems." AR 449. Production of GEOINT has four sub-components: (1) tasking and collection, (2) processing, (3) analysis and exploitation, and (4) dissemination. AR 449–50.

Tasking and collection and dissemination are the GEOINT production sub-components at issue in this case. TS_AR 6024–25. Tasking and collection calls on contractors to "identify and use the appropriate data sources, types, and formats with applicable tools to discover and retrieve data," and "manipulate and operate databases and other tools to track, query, archive, and recall previous tasking." AR 449. Dissemination involves the contractor's ability to "distribute the products resulting from intelligence production via electronic dissemination systems and written, visual, and oral methods," and to "archive data, products, data reports, and intelligence reports." AR 450.

Subfactor 3 also had one measure of merit, which was met when "the Offeror demonstrates sound technical knowledge and understanding in response to the intelligence scenario." AR 742; TS_AR 6049. The intelligence scenario posited a



4



### III. Evaluation of Proposals and Award of Contracts

After receiving ten proposals, NASIC established a competitive range that excluded two offerors. AR 4563. NASIC then sent the eight remaining offerors (including Barbaricum) evaluation notices that identified deficiencies in the initial proposals. *Id.* Plaintiff received 20 evaluation notices. TS_AR 4779–97.

As mentioned above, only the deficiencies with Plaintiff's GEOINT analysis and intelligence scenario response remain at issue. Although Plaintiff's bid was deemed acceptable in all other evaluated areas, the GEOINT and intelligence scenario shortcomings, and consequent "unacceptable" ratings for technical subfactors two and three, led to Plaintiff's exclusion from the competitive range. Tr. at 20; Pl.'s MJAR. at 10–12; TS_AR 6488–95, 6532–34.

#### A. Evaluation of Plaintiff's Proposal's GEOINT Analysis

Plaintiff's initial proposal had three GEOINT deficiencies. TS_AR 4782. Two of those deficiencies persisted in the final proposal, TS_AR 6025, both of which related to the production of GEOINT.



5

The first of those deficiencies arose because NASIC believed Plaintiff's initial proposal provided "insufficient detail to demonstrate a sound technical understanding of the GEOINT discipline in relation to the Production scope of work, specifically Tasking and Collection, Processing, Analysis and Exploitation, and Dissemination." TS_AR 4782. Barbaricum was asked to "[p]rovide further information to demonstrate technical understanding" of GEOINT production. *Id.*

The other GEOINT deficiency stemmed from Plaintiff's perceived failure to ███████████████████████████████████ The agency stated the ███████████████████████████████████████████████████████████████ and thus requested that Barbaricum ███████████████████████████████████████.

After conducting discussions with the agency, *see, e.g.*, TS_AR 4798, Plaintiff's final revised proposal modified the initial proposal in several ways. *See* TS_AR 5236–40. Nonetheless, NASIC concluded that Plaintiff failed to show that it could perform the "Tasking and Collection" and "Dissemination" elements of GEOINT production. TS_AR 6024–26.

NASIC stated that Plaintiff's revised proposal showed ███████████████████████████████████████████████████████████████. According to the NASIC evaluation, Barbaricum had failed to ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.

The agency also indicated that Plaintiff had not shown familiarity with the ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████



The agency thus found that Plaintiff's final proposal "did not meet the Measure of Merit" for GEOINT because of those two outstanding deficiencies, leading to an "unacceptable" rating for Technical Subfactor 2. TS_AR 6025–26, 6489, 6493.

### B. Evaluation of Plaintiff's Intelligence Scenario Response

Plaintiff's initial proposal had 14 intelligence scenario deficiencies. TS_AR 4787–97. This case concerns the five deficiencies that persisted in the final proposal. TS_AR 5990, 6004, 6013.

The first two related to Plaintiff's 

The third and fourth deficiencies cited Plaintiff's failure "to adequately discuss relevant" ▮. The evaluation notice indicated that Plaintiff should ▮

The fifth deficiency faulted Barbaricum's discussion of the ▮

7

████████████████████████████████████████
████████████████████

The agency concluded the deficiencies remained unresolved in Plaintiff's final proposal. TS_AR 5990, 6004, 6013, 6049–53.

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
██████████████████████

As for the fifth deficiency — ████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████

### C. Contract Awards

All other offerors that passed through the "entry gate" also received evaluation notices listing deficiencies in their initial proposals. *See* AR 4563; TS_AR 4695–4879. Two offerors (Apogee and NextGen Federal Systems, LLC) were, like Plaintiff, ultimately excluded from the competitive range because of technical deficiencies in their final proposals. TS_AR 6435, 6535; AR 4566–67. However, five other offerors — Altamira, Epsilon, Modern Technology Solutions, Inc. ("MTSI"), Radiance, and Xandar — were found to have successfully addressed all deficiencies with their initial proposals and were thus placed in the final competitive range. AR 4567; *see, e.g.*, TS_AR 5804, 6152, 6214, 6343, 6397.

8

After the final competitive range comprising technically acceptable proposals was established, the agency analyzed the reasonableness of each remaining offeror's price proposals. *See* AR 4476, 4484, 4495–96, 4509, 4532, 4544, 4565, 4652; TS_AR 6489. Following a determination that each remaining offeror's price proposal was reasonable, every offeror in the final competitive range was awarded a NOVASTAR contract. *See* Def.'s MJAR at 4, 11.

DISCUSSION

## I. Jurisdiction

To reach the merits of the case, I must first determine that the Court has jurisdiction over Plaintiff's claims. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). This Court's jurisdiction in bid protests rests on the Tucker Act, 28 U.S.C. § 1491(b)(1), as amended by the Administrative Dispute Resolution Act of 1996, Pub L. No. 104-320, § 12(a)–(b), 110 Stat. 3870, 3874 (1996) (codified at 28 U.S.C. § 1491(b)); *see Dyonyx, L.P. v. United States*, 83 Fed. Cl. 460, 464–65 (2008). The Tucker Act now grants this Court jurisdiction to "render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to ... the award of a contract or any alleged violation of statute or regulation in connection with a procurement." 28 U.S.C. § 1491(b)(1); *see also Impresa Construzioni Geom. Domenico Garufi v. United States*, 285 F.3d 1324, 1330 (Fed. Cir. 2001). This Court thus has jurisdiction over the subject matter.

Plaintiff must also have standing to challenge the contract award. *Air Borealis Limited Partnership v. United States*, 167 Fed. Cl. 370, 380–81 (2023). Plaintiff has Article III standing because it claims an injury, namely rejection of its bid, which is traceable to the allegedly defective procurement process and which could be redressed by this Court. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).

The Federal Circuit has recently clarified that the Tucker Act's "interested party" requirement goes only to "statutory standing," and is thus not jurisdictional in a strict sense. *CACI, Inc.-Fed. v. United States*, 67 F.4th 1145, 1151 (Fed. Cir. 2023); *see also Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 n.4 (2014). When a protestor challenges the agency's determination that its own bid "had disqualifying deficiencies," statutory standing overlaps with the merits. *CACI*, 67 F.4th at 1152. Nonetheless, "when the plaintiff is arguing that the [government] made an error in evaluating the bid of another contractor," a judicial determination of statutory standing remains "required," although it does not need to be made before reaching the merits. *Id.*

The Federal Circuit has developed a two-part test for determining whether a plaintiff is in fact an "interested party:" A plaintiff must show that it (1) is an "actual or prospective bidder," and (2) "possesses the requisite direct economic interest." *Rex Serv. Corp. v. United States*, 448 F.3d 1305, 1307 (Fed. Cir. 2006) (citing *Myers Investigative and Sec. Servs., Inc. v. United States*, 275 F.3d 1366, 1369 (itself citing *Lujan*, 504 U.S. at 561 (1992)). There is no dispute that Plaintiff is an actual bidder.

As for the second element, a direct economic interest exists if there was a substantial chance that the protestor's proposal "could have been the basis for an award." *Velocity Training, LLC v. United States*, 161 Fed. Cl. 201, 206 (2022). For purposes of statutory standing, the Court need only "mak[e] a preliminary determination ... with respect to the plaintiff's chances of securing the contract[.]" *CACI*, 67 F.4th at 1152. Plaintiff alleges that all the deficiencies NASIC found in its final proposal were erroneous. *See* Pl.'s MJAR at 2–3. If Plaintiff's proposal had been found to have no deficiencies, it would likely have been deemed acceptable and entered the competitive range. AR 741. All the other five offerors in the competitive range appear to have received contracts, and the Solicitation contemplated award of a sixth contract, thus making it plausible that, had Barbaricum entered the final competitive range, it would have received a contract too. AR 739. The likelihood that Barbaricum would have entered the competitive range and received a contract absent the alleged errors gives Barbaricum the necessary economic interest. *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001); *Chenega Mgmt., LLC v. United States*, 96 Fed. Cl. 556, 571–72 (2010).

## II. Legal Standard

This Court follows Administrative Procedure Act standards of review in bid protests. *See* 5 U.S.C. § 706; 28 U.S.C. § 1491(b)(4); *Banknote Corp. of Am., Inc. v. United States*, 365 F.3d 1345, 1350 (Fed. Cir. 2004). To win a post-award bid protest, a plaintiff must show that the agency decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" *Office Design Group v. United States*, 951 F.3d 1366, 1371 (Fed. Cir. 2020); *Bayfirst Solutions, LLC v. United States*, 104 Fed. Cl. 493, 500 (2012); 5 U.S.C. § 706(2)(A); Tr. at 38. A government procurement decision may be set aside as arbitrary or capricious if "(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation of procedure." *Impresa*, 238 F.3d at 1332; *see also Bannum, Inc. v. United States*, 404 F.3d 1346, 1351 (Fed. Cir. 2005); *Air Borealis*, 167 Fed. Cl. at 381.

When a court reviews a procurement decision, it must determine "whether the contracting agency provided a coherent and reasonable explanation of its exercise of

discretion." *Impresa*, 238 F.3d at 1332–33 (quotes omitted) (citing *Latecoere Int'l Inc. v. United States Dep't of Navy*, 19 F.3d 1342, 1356 (11th Cir. 1994)). If the agency acted within the scope of its statutory authority, considered all the relevant factors, ignored irrelevant factors, did not make a "clear error of judgment," and followed the necessary procedural requirements, its decision is not arbitrary or capricious. *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971). This Court "is not empowered to substitute its judgment for that of the agency," but instead must ask whether the agency has "examined the relevant data and articulated a satisfactory explanation for its action." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

Under any circumstances, that standard of review is "highly deferential" to agency decision making. *FirstLine Transp. Sec. v. United States*, 107 Fed. Cl. 189, 196 (2012). When a protester challenges the government's determination of the technical acceptability of a proposal, the protester bears an "unusually heavy burden of proof in showing that the determination was ... arbitrary and capricious." *Westech Int'l, Inc. v. United States*, 79 Fed. Cl. 272, 286 (2007) (quoting *Cont'l Bus. Enters. v. United States*, 452 F.2d 1016, 1021 (Ct. Cl. 1971); *see also E.W. Bliss Co. v. United States*, 77 F.3d 445, 449 (Fed. Cir. 1996). When the agency decision concerns national defense and national security, the deference granted the agency grows stronger still. 28 U.S.C. § 1491(b)(3); *CHE Consulting, Inc. v. United States*, 78 Fed. Cl 380, 387 (2007).

Among other arguments, Plaintiff claims that it was subjected to disparate treatment by the agency and that there were latent ambiguities within the Solicitation. Courts have developed additional standards guiding review of those claims.

To prevail on a claim of disparate treatment, a protestor must demonstrate that its proposal was "unreasonably downgraded ... for deficiencies that were substantively indistinguishable" from deficiencies in the proposals of successful offerors, or that the agency "inconsistently applied objective solicitation requirements between [the protester] and other offerors[.]" *Office Design Group*, 951 F.3d at 1372–73.

The ambiguity of a solicitation is a question of law that this Court considers *de novo*. *Enhanced Veterans Solutions, Inc. v. United States*, 131 Fed. Cl. 565, 578 (2017). If the provisions of a solicitation are clear, the Court must give them "their plain and ordinary meaning." *Id.* A provision in a solicitation is ambiguous if it does not plainly support only one reading, but instead supports more than one reading within a "zone of reasonableness." *NVT Technologies, Inc. v. United States*, 370 F.3d 1153, 1159

(Fed. Cir. 2004) (quoting *Metric Constructors, Inc. v. NASA*, 169 F.3d 747, 751 (Fed. Cir. 1992)).

An ambiguity can either be "patent" or "latent." *See Jowett, Inc. v. United States*, 29 Fed. App'x. 584, 587 (Fed. Cir. 2002). Ambiguities are patent when they are "evident on the face of a contracting document," *Accura Eng'g & Consulting Servs., Inc. v. United States*, 167 Fed. Cl. 258, 270 (2023), such that it would be "unreasonable for a contractor not to discover and inquire about them." *See Triax Pac. v. West*, 130 F.3d 1469, 1475 (Fed. Cir. 1997). A latent ambiguity is any ambiguity "[m]ore subtle" than a patent ambiguity. *See id.* When an ambiguity is patent, it must be raised with the government prior to the close of the bidding process. *Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308, 1313 (Fed. Cir. 2007). Allegations of latent ambiguity may be raised for the first time in litigation. *COMINT Sys. Corp. v. United States*, 700 F.3d 1377, 1382 n.5 (Fed. Cir. 2012); *Blue & Gold Fleet*, 492 F.3d at 1313.

In addition to demonstrating an error in agency decision making, a protester must show that the agency's errors were prejudicial. That requires proving that "but for that error, the protestor had a substantial chance of receiving a contract award." *Office Design Group*, 951 F.3d at 1372 (citing *Alfa Laval Separation, Inc. v. United States*, 175 F.3d 1365, 1367 (Fed. Cir. 1999)); *see also Wisconsin Physicians Serv. Ins. Corp. v. United States*, 151 Fed. Cl. 22, 32 (2020).

Finally, when resolving motions for judgment on the administrative record under RCFC 52.1(c), this Court proceeds "as if it were conducting a trial on the record." *Bannum, Inc.*, 404 F.3d at 1354 (addressing former RCFC 56.1); *see also Young v. United States*, 497 F. App'x 53, 58–59 (Fed. Cir. 2012).

### III. Analysis

Barbaricum's proposal was excluded from the competitive range because NASIC found it was technically inadequate as to both production of GEOINT and the intelligence scenario. Barbaricum argues that (1) those findings were irrational, (2) NASIC applied disparate treatment to Plaintiff's proposal as compared to other offerors, and (3) the Solicitation contained latent ambiguities. Pl.'s MJAR at 2–5, 18. I address Barbaricum's arguments as applied to NASIC's two independent grounds for excluding it. Ultimately, while there may have been errors in the procurement, NASIC's decision to exclude Barbaricum was not arbitrary or capricious.

#### A. Plaintiff's GEOINT Analysis

Plaintiff argues that NASIC erred in concluding that Plaintiff's proposal offered a technically unacceptable discussion of GEOINT production. Plaintiff also argues that the agency's evaluation of the offerors' GEOINT proposals was marred

by disparate treatment. Pl.'s MJAR at 5. I conclude that NASIC did not act arbitrarily or capriciously in finding that Barbaricum's GEOINT production proposal was technically unacceptable and excluding Barbaricum from the competitive range.

### 1. NASIC's Evaluation of Plaintiff's GEOINT Proposal

NASIC concluded that Plaintiff did not meet the GEOINT production measure of merit because the proposal did not demonstrate understanding of the GEOINT production process or tools. TS_AR 6021–25. That decision is not arbitrary or capricious.

As mentioned above, agencies have wide latitude to evaluate the technical acceptability of proposals. *E.W. Bliss Co.*, 77 F.3d at 449. This case vividly illustrates why that is so: ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ The intelligence community's language for discussing GEOINT production has its own vocabulary and grammar. The deferential standard of review thus reflects the obvious difficulty of second-guessing NASIC's view that one offeror has shown understanding of the field while another has not. *Cf. Allicent Tech., LLC. v. United States*, 166 Fed. Cl. 77, 177–79 (2023); *Sys. Stud. & Simulation, Inc. v. United States*, No. 18-1494C, 2019 WL 912277, at *7 (Fed. Cl. Jan. 22, 2019). Put simply, it is difficult for anyone without experience in the field to say whether a given offeror has marshalled its phalanx of code names and acronyms into a coherent proposal.

A bid-protest plaintiff could still show that a technical evaluation is arbitrary and capricious by establishing, for example, that the administrative record contradicts the agency's decision in some objective way. *See DZSP 21, LLC v. United States*, 139 Fed. Cl. 110, 118 n.9 (2018); *see also Allicent Tech.*, 166 Fed. Cl. at 115. No matter how technical the field, if an agency rests its decision on finding that a proposal fails to mention "Item X," and if the proposal does in fact mention Item X, the agency has acted arbitrarily and capriciously because its conclusion is irrational. *DZSP 21*, 139 Fed. Cl. at 118 n.9; *Allicent Tech.*, 166 Fed. Cl. at 115. A court can then set aside the agency action on that basis, even if it has absolutely no idea what Item X is, what it does, or why it is important. Courts evaluating agency action on technical subjects therefore look to whether the record contradicts the agency's reasoning in ways that cannot be ascribed to the agency's judgment or expertise. *See DZSP 21*, 139 Fed. Cl. at 118 n.9; *Allicent Tech.*, 166 Fed. Cl. at 115.

Here, the record tends to corroborate NASIC's reasoning. To take one example, NASIC faulted Barbaricum for failing to show it ▬▬▬▬▬▬▬▬▬

███████████████████████████████████████ is beyond this Court's authority to second-guess, at least on the present record. If Barbaricum had pointed to a plain discussion in its proposal of ██████████████████████ █████████, it might have been arbitrary and capricious for NASIC to overlook it. But it is not clear that the proposal contains any such discussion. Instead, the proposal mentions that a ████████████████████████████████████ ██████████████████████████████████████████████████████████████ █████████████████████████████. The record thus seems to be consistent with NASIC's view that Barbaricum has a different understanding of █████████ █████████.

To take another example, NASIC concluded that Barbaricum failed to demonstrate an understanding of tools and systems used in GEOINT production. ██████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████that Barbaricum did not show real familiarity with the tools and how they are used.

At most, Barbaricum has argued that a NASIC evaluator was wrong to criticize Barbaricum for stating ████████████████████████████████████████ ██████████████████████████████████████████████████████████████ █████████████████████ The question of whether proposals have accurately described ████████████████████████████ is a matter for agency discretion and expertise. *Allicent Tech.*, 166 Fed. Cl. at 177–79 (agency has discretion to evaluate offeror's "understanding"). This Court cannot, without an unmistakable showing in the record, overrule the agency's description of the relevant tools and processes. *Id.* at 109; *McVey Co., Inc. v. United States*, 111 Fed. Cl. 387, 417–19 (2013).

Barbaricum claims, as a fallback, that NASIC failed to bring these GEOINT deficiencies to its attention during discussions. Pl.'s MJAR at 19–20. Evaluation Notice BARB-TECH2-004 explicitly stated, however, that "[t]he offeror's proposal provides insufficient detail to demonstrate a sound technical understanding of the GEOINT discipline in relation to the Production scope of work." TS_AR 4782. That

put Barbaricum on notice that there were problems with its GEOINT analysis from an early stage. *See* TS_AR 2429, 2599.

Because the agency's stated reasons for rating Plaintiff's GEOINT analysis as unacceptable rationally correspond to facts in the record, I cannot find that NASIC's rating was arbitrary or capricious.

### 2. Disparate Evaluation of GEOINT Proposals

Separate from the merits of its own proposal, Plaintiff objects to NASIC's treatment of the GEOINT analyses in the successful proposals by MTSI, Radiance, and Altamira. Plaintiff claims that NASIC engaged in disparate treatment when it found that MTSI, Radiance, and Altamira's proposals were technically acceptable with regard to GEOINT. Pl.'s MJAR at 3–4, 25, 35, 41, 47. However, the record does not plainly contradict the agency's distinction between Plaintiff's GEOINT analysis and those of the successful offerors, and in fact at several points corroborates the agency's conclusion. Plaintiff's claims of disparate treatment must therefore fail.

Barbaricum, once again, bears a heavy burden in challenging expert evaluators' views about which proposals demonstrate the offerors' subjective understanding of GEOINT production. The successful offerors' proposals in fact differ from Barbaricum's in objective ways. The GEOINT sections of successful proposals discuss several of the tools NASIC faulted Plaintiff for omitting.[6] Although they did not mention *every* such tool, *see, e.g.*, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ what the agency expected was ultimately that offerors display "an understanding of how the Tasking and Collection process works." TS_AR 5968–69. The successful proposals also described the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ differently from Barbaricum.[7] The agency thus could reasonably distinguish the other offerors' understanding of the GEOINT processes from Plaintiff's, *see, e.g.*, TS_AR 1990–91, 5970, meaning that it did not subject Barbaricum to disparate treatment.

### B. Plaintiff's Intelligence Scenario Response

Plaintiff argues that NASIC erred in concluding that it offered a technically unacceptable intelligence scenario response. Pl.'s MJAR at 49. Plaintiff also argues that NASIC subjected it to disparate treatment because successful offerors exhibited an identical deficiency. Pl.'s MJAR at 65–66. I conclude that although NASIC may have subjected Plaintiff to disparate treatment, any error was harmless.

1. **NASIC's Evaluation of Plaintiff's Intelligence Scenario Response**

NASIC rated Plaintiff's intelligence scenario response as unacceptable because: (1) Plaintiff did not discuss ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■, and (2) Plaintiff's approach to ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■. Plaintiff contends that because no such discussions were called for by the intelligence scenario prompt, and NASIC's reasoning was irrational and unsupported by the record. Alternatively, Plaintiff argues that the Solicitation was ambiguous.



Because NASIC instructed Plaintiff to perform a specific analysis that it did not provide, NASIC's decision to fail Plaintiff's intelligence scenario response was not arbitrary and capricious. *See, e.g.*, *ManTech Advanced Sys. Int'l, Inc. v. United States*, 141 Fed. Cl. 493, 511–13 (2019); *MSC Indus. Direct Co., Inc. v. United States*, 140 Fed. Cl. 632, 643–46 (2018); *see also E.W. Bliss Co.*, 77 F.3d at 448–49 ("In negotiated procurements, a proposal that fails to conform to the material terms and conditions of the solicitation should be considered unacceptable."). If Plaintiff had expressly ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

Plaintiff also contends that the direction to ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■. Pl.'s MJAR at 52 Plaintiff asserts that the ambiguity was "not readily apparent from the face of the Solicitation," and that it was therefore a latent ambiguity that could be challenged post-award. Pl.'s MJAR at 53 (citing *Per Aarsleff A/S v. United States*, 829 F.3d 1303,

1312–13 (Fed. Cir. 2016)). As explained above, though, the language of the intelligence scenario prompt was not ambiguous, but explicit. In order for language in a solicitation to be "ambiguous," it must admit multiple interpretations within the "zone of reasonableness." *NVT Technologies*, 370 F.3d at 1159 (quoting *Metric Constructors*, 169 F.3d at 751). Here, it appears unlikely that an explicit instruction to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Even if the prompt was ambiguous by itself, one of NASIC's evaluation notices informed Plaintiff that it did not adequately ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ At a minimum, the evaluation notice put Plaintiff on notice that NASIC had a different interpretation of the prompt. That clarification "removed" the ambiguity, *see Per Aarsleff*, 829 F.3d at 1312–13, leaving Plaintiff with the information it needed to satisfy the agency's expectations.

The other intelligence scenario deficiency involves ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ The agency therefore could rationally rely on that language to distinguish between ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ scenario responses. *See Squire Solutions, Inc. v. United States*, 156 Fed. Cl. 249, 267–68 (2021); *McConnell Jones Lanier & Murphy LLP v. United States*, 128 Fed. Cl. 218, 230–32 (2016); *Tidewater Mgmt. Servs., Inc. v. United States*, 573 F.2d 65, 91 (Ct. Cl. 1978). In other words, if the point of the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, Plaintiff cannot make up for shortcomings in its proposal by complaining that the agency was not specific enough about the ▮▮▮▮ answers it hoped to see.

2.  **Disparate Evaluation of Intelligence Scenario Responses**

Plaintiff also argues that its ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ from the proposals of at least some of the successful offerors. Tr. at 106. Plaintiff appears to be correct, but any error is harmless.

17



As to the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ At the point in the record where the government indicates Epsilon provided ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮ Yet Epsilon's proposal was deemed to meet the measures of merit for the intelligence scenario, TS_AR 6115–16, while Plaintiff's proposal was not. It therefore appears that the agency downgraded Plaintiff, but not Epsilon, for substantively indistinguishable deficiencies. *Office Design Group*, 951 F.3d at 1372–73.

Plaintiff next points out that another successful offeror (Xandar) did not discuss ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ The initial evaluation[9] of Xandar's proposal instead cited material in other sections of Xandar's proposal as proof that Xandar understood and properly addressed the intelligence scenario. TS_AR 4444; Def.'s Reply at 15.

That is questionable too. While NASIC is not obligated to search through an offeror's entire proposal to find responsive information that should have been located elsewhere, *Allicent Tech.*, 166 Fed. Cl. at 151 (citing *CACI, Inc. v. United States*, 158 Fed. Cl. 77, 151 (2022)), it had to "fairly and impartially evaluate all proposals." *Office Design Group*, 951 F.3d at 1372. If the agency had scoured Plaintiff's proposal for responsive material outside the section immediately under consideration, they would have, in fact, found ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. If the agency scoured Xandar's proposal for helpful material, it should have scoured Barbaricum's too.

Nonetheless, Plaintiff must not only show disparate treatment, but also that the disparate treatment was prejudicial. *Glenn Def. Marine (ASIA), PTE Ltd. v. United States*, 720 F.3d 901, 907 (Fed. Cir. 2013). To establish prejudicial error, a protestor must show that but for the error, the protestor had a substantial chance of receiving a contract award. *Alfa Laval Separation, Inc.*, 175 F.3d at 1367 (Fed. Cir. 1999). Harmless errors, *i.e.*, those that would not have substantially changed the unsuccessful offeror's chance of receiving a contract, do not justify relief. *Grumman Data Sys. Corp. v. Dalton*, 88 F.3d 990, 1000 (Fed. Cir. 1996); *Lockheed Missiles & Space Co. v. Bentsen*, 4 F.3d 955, 960 (Fed. Cir. 1993); *Bannum, Inc.*, 404 F.3d at 1358. Plaintiff has not proven that NASIC's errors were prejudicial because, as addressed above, Plaintiff's proposal remains unacceptable under Technical

---

[9] Xandar was not issued an evaluation notice concerning its response to intelligence scenario prompt a.v.2, and therefore its responses to prompt a.v.2 were identical between its initial (TS_AR 1593–95) and final (TS_AR 5764–65) proposals.

Subfactor 2. To enter the competitive range, a proposal had to be deemed "acceptable" on every subfactor. TS_AR 6025; AR 739. Therefore, even if other offerors were excluded from the competitive range — or if Plaintiff's intelligence scenario response were retroactively deemed "acceptable" — Plaintiff would still have been excluded and would not be entitled to relief.

### C. There Is Not Good Cause to Supplement the Administrative Record

Plaintiff has also requested that the administrative record be supplemented with the declaration of Plaintiff's former Chief Scientist, Dr. John Hogan. *See* Pl.'s Second Mot. to Supp. at 2 (contending that "[s]upplementation of the administrative record is appropriate when necessary to assist the Court in understanding technical or complex information in a bid protest") (citing *NCL Logistics Co. v. United States*, 109 Fed. Cl. 596, 613 (2012)). Plaintiff argues that inclusion of the Hogan Declaration is necessary to provide the Court with "insight" into standard industry procedures regarding GEOINT analysis and to provide "a more in-depth understanding of how" certain tools mentioned in its proposal "fit into the production of GEOINT reports." *Id.* at 3–4. Such information, Plaintiff contends, "is critical to understanding Plaintiff's position that [its proposal] demonstrated technical acceptability under the NOVASTAR solicitation," despite failing to discuss ▮▮▮▮▮▮▮▮▮▮ in the relevant proposal section. *Id.* at 4.

Supplementation of the administrative record would not be proper. This Court evaluates agency contracting decisions based on the record before the agency at the time it made its original decision. *Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1379 (Fed. Cir. 2009); *NEQ, LLC v. United States*, 88 Fed. Cl 38, 46–47 (2009). Although there are exceptions to that general principle, such as where additional information is needed for meaningful review, *see, e.g., Axiom Res. Mgmt., Inc.*, 564 F.3d at 1380; *Naval Sys., Inc. v. United States*, 153 Fed. Cl. 166, 179–81 (2021); *NCL Logistics*, 109 Fed. Cl. at 613, this is not such a case. The point of Plaintiff's additional evidence appears to be that the agency should have taken references to particular tools in Plaintiff's proposal as evidence of Plaintiff's technical capacity. But that goes to the agency's technical judgment. Under the applicable standard of review, what matters is not the exact nature and use of different tools used in the GEOINT field — a technical question for the agency rather than the Court — but whether the record is consistent with the agency's decision that Barbaricum's proposal was technically unacceptable. Because Plaintiff's proposed supplementation goes beyond explaining the record and challenges the agency's technical judgment, it should not be added to the record.

## CONCLUSION

For the foregoing reasons, Defendant's cross-motion for judgment on the administrative record is **GRANTED**. Plaintiff's motion for judgment on the administrative record and motion to supplement the administrative record are **DENIED**. The case is **DISMISSED**.

Defendant is **ORDERED** to submit this Opinion for classification review and return a redacted version to the Court no later than June 12, 2024. The Court will file the redacted version under seal to permit Plaintiff to propose additional redactions.

The clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

s/ Stephen S. Schwartz
STEPHEN S. SCHWARTZ
Judge